UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMES DONALDSON, PEGGY                    )
DONALDSON, INDIVIDUALLY AND FOR
THE ESTATE OF ADRIAN J. BUTLER,           )
ELDRIDGE BUTLER, KAY SCHILD,              )
INDIVIDUALLY AND FOR THE ESTATE
OF RICHARD L. SCHILD, K.S., a minor,      )
KEELY SCHILD, BRUCE SCHILD, TAMMY         )
RICHARD, INDIVIDUALLY AND FOR THE
ESTATE OF BRANDON TEETERS, GLEN           )          **Case No.: 1:17-cv- 1206**
RICHARD, HEATHER RICHARD, JOE             )
PAUPORE, VICKI PEREZ, INDIVIDUALLY
AND FOR THE ESTATE OF EMILY PEREZ,        )
DANIEL PEREZ, BRIAN BEEM,                 )
ELIZABETH BEEM, , DIANE BEEM,             )          **JURY TRIAL DEMANDED**
JOSEPH BEEM, CASSANDRA BEEM,
KAITLYN BEEM, K.B., a minor, JOSEPH       )
BEEM, JR., CYNTHIA COLÓN, BRANDON         )
BYERS, MEGAN BYERS, C.B. a minor, AMY
MORRIS, INDIVIDUALLY AND FOR THE          )
ESTATE OF DANIEL MORRIS, GLENN            )
MORRIS, ADAM MORRIS, CASSIDY
MORRIS, DONNA MOKRI, MOHAMMED             )
MOKRI, KRISTI PEARSON,                    )
INDIVIDUALLY AND FOR THE ESTATE
OF ANDREW NELSON, MARIAH                  )
COWARD, INDIVIDUALLY AND FOR THE          )
ESTATE OF AARON PRESTON, AUBREY
BARBER, INDIVIDUALLY AND FOR THE          )
ESTATE OF BRANDON STOUT,                  )
MICHELLE WAGER, DEBORAH HARRIS,
INDIVIDUALLY AND FOR THE ESTATE           )
OF BLAKE HARRIS, JIM SCHUMANN,            )
INDIVIDUALLY AND FOR THE ESTATE
OF JASON SCHUMANN, JERRAL                 )
HANCOCK, J.H., a minor, A.H., a minor,    )
STACIE TSCHERNY, DIRRICK BENJAMIN,        )
SAVANNAH TSCHERNY, BRENDA
RICHARDS, INDIVIDUALLY AND FOR            )
THE ESTATE OF SHAWN GAJDOS, JULIE         )
PAYNE, INDIVIDUALLY AND FOR THE           )
ESTATE OF CAMERON PAYNE, A.L.P., a
minor, K.P., a minor, CONIETHA ZAPFE,     )

INDIVIDUALLY AND FOR THE ESTATE )
OF WILLIAM ZAPFE, C.Z., a minor, S.Z., a
minor, A.Z., a minor, SIMONA FRANCIS, )
INDIVIDUALLY AND FOR THE ESTATE )
OF LERON WILSON, LAURA GONZALEZ,
INDIVIDUALLY AND FOR THE ESTATE )
OF ZACHARIAH GONZALEZ, BENEDICT
GONZALEZ, DOESHIE WATERS, )
INDIVIDUALLY AND FOR THE ESTATE
OF ERIC COTTRELL, NORRIS WATERS, )
JR., JULIA EDDS, INDIVIDUALLY AND
FOR THE ESTATE OF JONATHAN EDDS, )
BARRY EDDS, JOEL EDDS, STEPHANIE )
MARCIANTE, INDIVIDUALLY AND FOR
THE ESTATE OF LUIGI MARCIANTE, JR., )
L.M., a minor, MARIA MARCIANTE, LUIGI
MARCIANTE, ENZA BALESTRIERI, )
BRYAN WAGNER, LEESHA CROOKSTON,
INDIVIDUALLY AND FOR THE ESTATE )
OF DUNCAN CROOKSTON, JEANETTE
KNAPP, INDIVIDUALLY AND FOR THE )
ESTATE OF DAVID ALEX KNAPP, )
PATRICK HANLEY, KATHERINE
HANLEY, EDWARD HANLEY, JULIE )
ROSENBERG, INDIVIDUALLY AND FOR
THE ESTATE OF MARK ROSENBERG, J.R., )
a minor, M.R., a minor, LOIS RICHARD,
INDIVIDUALLY AND FOR THE ESTATE )
OF JOSEPH RICHARD, III, JOSEPH
RICHARD, JR., CARMEN RICHARD )
BILLEDEAUX, MELANIE AZTMANN, )
INDIVIDUALLY AND FOR THE ESTATE
OF JOSE ULLOA, S.U., a minor, JOSE )
ULLOA, JR., FRANCISCA MARMOL,
RUBERTERNA ULLOA, SR., STEPHANIE )
MARMOL, JOSH CRAVEN and HOLLY
CRAVEN, )

     Plaintiffs, )

      )

ISLAMIC REPUBLIC OF IRAN, )

     Defendant. )

128

**COMPLAINT**

## I.     NATURE OF THE ACTION

1.      This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1605A (hereinafter "FSIA") for wrongful death, personal injury and related torts, by the estates and families of United States nationals and/or members of the U.S. armed forces (as defined in 10 U.S.C. §101) who were killed or injured by Iran and/or its agents in Iraq from 2004 to 2011.

2.      Iran's aforementioned agents included the U.S.-designated Foreign Terrorist Organization (as that term is defined in 8 U.S.C. §1189 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) Hezbollah; the Islamic Revolutionary Guard Corps ("IRGC"), whose subdivision known as the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") is a U.S.-designated Specially Designated Global Terrorist; and other terrorist agents that included a litany of Iraqi Shi'a terror groups referred to herein collectively as "Special Groups."

3.      The United States officially designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to §6(j) of the Export Administration Act, §40 of the Arms Export Control Act, and §620A of the Foreign Assistance Act.

4.      The United States designated Hezbollah a Specially Designated Terrorist on January 25, 1995. Hezbollah was designated a Foreign Terrorist Organization by the United States on October 8, 1997, and it has retained that designation since that time. Hezbollah was designated a Specially Designated Global Terrorist by the United States on October 31, 2001, pursuant to E.O. 13224.

## II.    JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter and over Defendant pursuant to 28 U.S.C. §§1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

6.      28 U.S.C. §1605A(c) provides a federal private right of action against a foreign

state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts.

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391(f).

## III.   THE DEFENDANT

8.      At all times relevant to this Complaint, Defendant Iran is and was a foreign state within the meaning of 28 U.S.C. §1603 and designated a State Sponsor of Terrorism pursuant to §6(j) of the Export Administration Act of 1979 (50 U.S.C. App. §2405(j)).

9.      Iran provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. §1605A, including the terrorist attacks in which Plaintiffs were killed, injured or maimed, and performed actions that caused the terrorist attacks and the harm to Plaintiffs herein.

10.      The Government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture and hostage takings, particularly through its Islamic Revolutionary Guard Corps and its Lebanese proxy, Hezbollah.

11.      The Islamic Revolutionary Guard Corps ("IRGC") is nominally comprised of five branches (Ground Forces, Air Force, Navy, Basij militia, and Qods Force special operations ("IRGC-QF")) in addition to a counterintelligence directorate and representatives of the Supreme Leader. Several of the IRGC's leaders have been sanctioned under U.N. Security Council Resolution 1747.

12.      According to the U.S. State Department's 2005 Country Reports on Terrorism: "[t]he IRGC was increasingly involved in supplying lethal assistance to Iraqi militant groups, which destabilizes Iraq … Senior Iraqi officials have publicly expressed concern over Iranian interference in Iraq, and there were reports that Iran provided funding, safe passage, and arms to insurgent elements."

128

13.     The IRGC-QF's "Department 2000" manages Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapon systems, including military grade Explosively Formed Penetrators ("EFPs"), anti-tank guided missiles, and various rockets, such as the Fajr-5.

14.     Explosively Formed Penetrators were used to injure and kill Plaintiffs. Such bombs are sometimes inaccurately called "improvised explosive devices" ("IEDs"); in reality, the Explosively Formed Penetrators were not "improvised" but professionally manufactured and specifically designed by Iran and its agents to target U.S. and Coalition Forces' armor.

15.     In October 2007, the IRGC-QF was designated a Specially Designated Global Terrorist ("SDGT") pursuant to E.O. 13324 for its terrorism-related activities. The U.S. Treasury Department's press release announcing the designation noted that:

> The Qods Force has had a long history of supporting Hezbollah [sic]'s military, paramilitary, and terrorist activities, providing it with guidance, funding, weapons, intelligence, and logistical support. The Qods Force operates training camps for Hezbollah [sic] in Lebanon's Bekaa Valley and has reportedly trained more than 3,000 Hezbollah [sic] fighters at IRGC training facilities in Iran. The Qods Force provides roughly $100 to $200 million in funding a year to Hezbollah [sic] and has assisted Hezbollah [sic] in rearming in violation of UN Security Council Resolution 1701.
>
> *In addition, the Qods Force provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians.* (Emphasis added.)

## IV.   IRAN'S MATERIAL SUPPORT TO ACTS OF TERRORISM IN IRAQ 2004-2011

### A.   ISLAMIC REVOLUTIONARY GUARD CORPS - QODS FORCE IN IRAQ

16.     Even before the U.S. invasion of Iraq in 2003, the IRGC-QF had long cultivated ties to Shi'a opposition groups opposed to Saddam Hussein's brutal regime, including the Badr Corps that was headquartered in Iran throughout Iraq in the 1990s.

17.     During that time, the Badr Corps smuggled men and weapons into Iraq to conduct attacks against the Hussein regime.

18.     Before 2003, the Badr Corps served as Iran's most important surrogate inside Iraq, acting as a *de facto* arm of the IRGC-QF.

19.     After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly formed Iraqi security forces.

20.     Published reports indicate that thousands of members of the Badr Organization remained on the IRGC-QF payroll after 2004.

21.     Several senior Badr Corps operatives later emerged as key conduits for funneling weapons to Iranian proxies in Iraq from 2004-2011, including Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs, and Jamal Ja'far Muhammad, a/k/a Abu Mahdi al-Muhandis (a.k.a. "The Engineer"), who later led Kata'ib Hezbollah.

22.     "Department 1000" of the IRGC-QF, known as the Ramezan Corps, was in charge of Iraq operations and remains the largest Qods Force command outside of Iran. It coordinated, armed and influenced the Badr Organization.

23.     Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament, it also played a significant role in facilitating Special Groups operations in Iraq.

24.     A segment of senior Special Groups commanders such as Al-Muhandis are, or were, initially Badr Corps personnel.

25.     President Bush declared on May 1, 2003, that "major combat operations in Iraq have ended."

26.     On May 23, 2003, the Coalition Provisional Authority established as the interim government for Iraq disbanded the Iraqi military forces.

27.     The U.N. Security Council authorized the post-conflict occupation of Iraq by Coalition Forces in October 2003 to maintain "security and stability." S.C. Res. 1511, para. 13, U.N. Doc. S/RES/1511 (Oct. 16, 2003).

28.     Although U.S. policy (supported by U.N. Security Council resolutions) was to

establish peace and stability in Iraq in the hopes of establishing a democratic government, Iran viewed the U.S. peacekeeping efforts in Iraq as a potential threat to its regime.

29.     Rather than engage in armed conflict with the U.S. or other Coalition Forces, Iran chose to undermine U.S. peacekeeping efforts by supporting terrorism and sectarian violence in Iraq.

30.     After 2003, the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Ministry of Interior intelligence structure) in part through its influence within the Badr Organization.

31.     In addition to its coordination with the Badr Organization, the Ramezan Corps also cultivated, armed, trained and supported several Shi'a terror groups in Iraq that the U.S. military later termed "Special Groups."

32.     Although a June 7, 2004 U.N. Security Council Resolution (S.C. Res. 1546, U.N. Doc. S/RES/1546) expressly assigned Coalition Forces in Iraq the task of helping Iraq "*by preventing and deterring terrorism*," Iran set out to target Coalition Forces and force them out of Iraq.

33.     In sum, from October 16, 2003 onward, even though U.S. military personnel in Iraq were participants in an internationally recognized peace keeping mission, Iran embarked on a policy of terrorism, murder, kidnapping and torture to thwart those efforts.

34.     Iran opposed U.S. peacekeeping efforts and initiated acts of international terrorism against American military personnel, Coalition Forces and Iraqi citizens with the goals of destabilizing Iraq and increasing Iranian influence in that country.

35.     Iran, through its authorized agents and instrumentalities acting within the scope of their employment, agency and direction from Iran, provided material support and/or resources that facilitated acts of torture, extrajudicial killing and hostage taking that caused personal injury or death to more than one thousand Americans in Iraq.

36.     In particular, Iranian agents developed and cultivated Shi'a Special Groups,

providing training in the use of Explosively Formed Penetrators, Improvised Rocket Assisted Munitions, rocket-propelled grenades, sniper fire and mortars and operational and computer security.

### B.      SHI'A "SPECIAL GROUPS"

#### 1.      JAYSH AL MAHDI and the PROMISED DAY BRIGADES

37.      Jaysh al Mahdi (the "Mahdi Army" or "JAM") was established by radical Shi'a cleric Muqtada al-Sadr in June 2003.

38.      Like the Badr Organization, it received support and training from the IRGC.

39.      On April 18, 2004 it led the first major armed confrontation against U.S.-led forces in Iraq from the Shi'a community.

40.      Jaysh al Mahdi was co-founded by Imad Mughniyah, one of Hezbollah's senior commanders, acting under the direction of Iran.

41.      Jaysh al Mahdi expanded its territorial control of mixed or predominantly Shi'a neighborhoods and displaced or killed the local Sunni population. JAM was able to gain initial control in many of the neighborhoods surrounding Baghdad (including "Sadr City") by offering the Shi'a population protection and social services.

42.      Al-Sadr purportedly dissolved part of his militia after 2007, but he maintained a small group of Iranian-supported terrorists called the Promised Day Brigades to carry out attacks against Coalition Forces.

43.      The Promised Day Brigades received funding, training and weapons from the IRGC.

44.      The Promised Day Brigades actively targeted U.S. forces in an attempt to disrupt security operations and further destabilize Iraq. For example, on June 28, 2011 the Promised Day Brigades issued a statement claiming responsibility for 10 mortar and Katyusha rocket attacks against U.S. military convoys in which U.S. officials confirmed that three U.S. troops were killed.

## 2.      KATA'IB HEZBOLLAH

45.      For many years, Kata'ib Hezbollah functioned as Iran's go-to terrorist group in Iraq and received support from Lebanese Hezbollah, including training in weapons use; IED construction and operation; and sniper, rocket, and mortar attacks.

46.      Historically, Kata'ib Hezbollah operated mainly in Shi'a areas of Baghdad, such as Sadr City, and throughout the south.

47.      On June 24, 2009 the United States designated Kata'ib Hezbollah a Foreign Terrorist Organization.

48.      The State Department's notice of Kata'ib Hezbollah's designation stated:

> The organization has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. Kata'ib Hezbollah also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two UN workers.  In addition, KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.

49.      Kata'ib Hezbollah was also simultaneously designated a Specially Designated Global Terrorist because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."

50.      The Treasury Department's press release announcing Kata'ib Hezbollah's designation explained that Kata'ib Hezbollah had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces."

51.      The press release also quoted then-Under Secretary for Terrorism and Financial Intelligence Stuart Levey as stating: "the IRGC-Qods Force provides lethal support to Kata'ib Hezbollah and other Iraqi Shia militia groups who target and kill Coalition and Iraqi Security Forces."

52.      The press release further reported that between March 2007 and June 2008, Kata'ib Hezbollah led a number of attacks against U.S. forces in Iraq, advising: "[a]s of 2008, Kata'ib Hezbollah was funded by the IRGC-Qods Force and received weapons training and support

from Lebanon-based Hezbollah. In one instance, Hezbollah provided training-- to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks--to Kata'ib Hezbollah members in Iran."

53.     Furthermore, the press release noted:

> Recordings made by Kata'ib Hezbollah for release to the public as propaganda videos further demonstrate that Kata'ib Hezbollah conducted attacks against Coalition Forces. In mid- August 2008, Coalition Forces seized four hard drives from a storage facility associated with a Kata'ib Hezbollah media facilitator. The four hard drives included approximately 1,200 videos showing Kata'ib Hezbollah's sophisticated planning and attack tactics, techniques, and procedures, and Kata'ib Hezbollah's use of the most lethal weapons--including RPG-29s, IRAMs, and EFPs--against Coalition Forces in Iraq.
>
> One of the hard drives contained 35 attack videos edited with the Kata'ib Hezbollah logo in the top right corner. Additionally, between February and September 2008, Al-Manar in Beirut, Lebanon, broadcast several videos showing Kata'ib Hezbollah conducting multiple attacks against Coalition Forces in Iraq.
>
> Immediately preceding the Government of Iraq's approval of the United States-Iraq security agreement in late November 2008, Kata'ib Hezbollah posted a statement that the group would continue fighting Coalition Forces and threatened to conduct attacks against the Government of Iraq if it signed the security agreement with the United States.

54.     In 2008, the U.S. Department of Defense stated that Kata'ib Hezbollah, "also known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators' – roadside bombs designed to pierce armor-hulled vehicles – and other weapons such as rocket-assisted mortars."

55.     Kata'ib Hezbollah's leadership includes Abu Mahdi al-Muhandis (real name: Jamal al-Ibrahimi), a long-standing member of the Badr Organization who lived for many years in Iran.

56.     Al-Muhandis is wanted in Kuwait for his alleged role in the 1983 bombings of the American and French embassies in Kuwait City, as well as for his alleged involvement in the

assassination attempt on the Kuwaiti Emir in 1985.

57.     Al-Muhandis was designated a Specially Designated Global Terrorist in July 2009

on the same day Kata'ib Hezbollah was so designated. The press release noted:

> As of early 2007, al-Muhandis formed a Shia militia group employing instructors from Hezbollah to prepare this group and certain Jaysh al-Mahdi (JAM) Special Groups for attacks against Coalition Forces. The groups received training in guerilla warfare, handling bombs and explosives, and employing weapons-to include missiles, mortars, and sniper rifles. In another instance as of September 2007, al-Muhandis led networks that moved ammunition and weapons--to include explosively formed penetrators (EFPs)--from Iran to Iraq, distributing them to certain JAM militias to target Coalition Forces. As of mid-February 2007, al-Muhandis also ran a weapons smuggling network that moved sniper rifles through the Iran-Iraq border to Shia militias that targeted Coalition Forces.
>
> Al-Muhandis also provided logistical support for attacks against Iraqi Security Forces and Coalition Forces conducted by JAM Special Groups and certain Shia militias. In one instance, in April 2008, al-Muhandis facilitated the entry of trucks--containing mortars, Katyusha rockets, EFPs, and other explosive devices-- from Iran to Iraq that were then delivered to JAM Special Groups in Sadr City, Baghdad. Additionally, al-Muhandis organized numerous weapons shipments to supply JAM Special Groups who were fighting Iraqi Security Forces in the Basrah and Maysan provinces during late March-early April 2008.
>
> In addition to facilitating weapons shipments to JAM Special Groups and certain Shia militias, al-Muhandis facilitated the movement and training of Iraq-based Shia militia members to prepare them to attack Coalition Forces. In one instance in November 2007, al-Muhandis sent JAM Special Groups members to Iran to undergo a training course in using sniper rifles. Upon completion of the training course, the JAM Special Groups members had planned to return to Iraq and carry out special operations against Coalition Forces. Additionally, in early March 2007, al-Muhandis sent certain Shia militia members to Iran for training in guerilla warfare, light arms, marksmanship, improvised explosive devices (IED) and anti-aircraft missiles to increase the combat ability of the militias to fight Coalition Forces.
>
> In addition to the reasons for which he is being designated today, al-Muhandis participated in the bombing of Western embassies in Kuwait and the attempted assassination of the Emir of Kuwait in the early 1980s. Al-Muhandis was subsequently convicted in absentia by the Kuwaiti government for his role in the bombing and attempted assassination.

58.     In a July 2010 press briefing, U.S. General Ray Odierno described Kata'ib

Hezbollah as "clearly connected to Iranian IRGC [Iranian Revolutionary Guard Corps]."

### 3.     ASA'IB AHL AL-HAQ ("LEAGUE OF THE RIGHTEOUS")

59.     Asa'ib Ahl al-Haq is a Shi'a Special Group supported by Hezbollah and the IRGC-QF that has conducted assassinations and operations against Iraqi civilians, Iraqi Security Forces and Coalition Forces.

60.     Asa'ib Ahl al-Haq was originally established by a follower of Muqtada al-Sadr named Qais al-Khazali.

61.     His brother, Laith Khazali, also helped lead the organization.

62.     Asa'ib Ahl al-Haq split from al-Sadr's Jaysh al Mahdi in 2006. Since that time, Asa'ib Ahl al-Haq conducted thousands of IED attacks against U.S. and Iraqi forces; targeted kidnappings of Westerners; launched rocket and mortar attacks on the U.S. Embassy; murdered American soldiers; and assassinated Iraqi officials.

63.     At all relevant times, Asa'ib Ahl al-Haq received significant funding, training and arms from Iran, and closely coordinated with Iran's IRGC-QF and Hezbollah.

64.     In particular, Lebanese Hezbollah operative Ali Musa Daqduq provided training to Asa'ib Ahl al-Haq terrorists.

65.     Hezbollah and the IRGC-QF provided Jaysh al Mahdi, the Promised Day Brigades, Kata'ib Hezbollah, Asa'ib Ahl al-Haq and other Shi'a groups with a variety of weapons used to target U.S. and Coalition Forces engaged in their post-2003 peacekeeping mission.

66.     These weapons included signature Iranian munitions such as Explosively Formed Penetrators and Improvised Rocket Assisted Munitions, as well as 107 mm rockets (often used as part of IRAMs), 120 mm and 60 mm mortars, RPG launchers and other small arms.

### C.     EXPLOSIVELY FORMED PENETRATORS

67.     One of Iran's primary forms of material support and/or resources that facilitated

extrajudicial killings of U.S. citizens in Iraq was the financing, manufacturing and deployment of Explosively Formed Penetrators.

68.    As noted above, the EFPs deployed by the IRGC and Hezbollah in Iraq were not truly "improvised" explosive devices but professionally manufactured and specifically designed to target U.S. and Coalition Forces' armor.

69.    EFPs constitute "weapons of mass destruction" as that term is defined in 18 U.S.C. §2332a(2)(A).

70.    First used by Hezbollah against Israeli armor in Lebanon, EFPs are known as shaped charges, usually made with a manufactured concave copper disk and a High Explosive packed behind the liner.

71.    In Iraq, EFPs were often triggered by a passive infra-red device that set off the explosion within the EFP's casing, forcing the copper disk forward and turning it into a high velocity slug that could pierce most military-grade armor.

72.    To produce these weapons, copper sheets are often loaded onto a punch press to yield copper discs. These discs are annealed in a furnace to soften the copper. The discs are then loaded into a large hydraulic press and formed into the disk-like final shape.

73.    EFPs are far more sophisticated than homemade explosive devices such as traditional improvised explosive devices, and they are designed specifically to target vehicles such as armored patrols and supply convoys, though Hezbollah and the Special Groups have deployed them against U.S. and Iraqi civilians as well.

74.    Although Iran's use of EFPs was publicly disclosed by U.S. and British officials in 2005, the official identification of *specific* attacks as EFP attacks was not first publicly disclosed until 2010.

75.    In 2006, the U.S. State Department's Country Reports on Terrorism further documented Iran's specific efforts to provide terrorists with lethal EFPs to ambush and murder U.S. and other Coalition Forces:

Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed projectiles similar to those developed by Iran and Lebanese Hezbollah [sic]. The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces. The Revolutionary Guard, along with Lebanese Hezbollah [sic], implemented training programs for Iraqi militants in the construction and use of sophisticated IED technology. *These individuals then passed on this training to additional militants in Iraq.* (emphasis added.)

76.     Also in 2006, Brigadier Gen. Michael Barbero, Deputy Chief of Staff for Strategic Operations of the Multi-National Force – Iraq stated: "Iran is definitely a destabilizing force in Iraq. I think it's irrefutable that Iran is responsible for training, funding and equipping some of these Shi'a extremist groups and also providing advanced IED technology to them, and there's clear evidence of that."

77.     Brigadier Gen. Kevin Bergner commented on Iran funding of Hezbollah operatives in Iraq:

> Actions against these Iraqi groups have allowed coalition intelligence officials to piece together the Iranian connection to terrorism in Iraq […] Iran's Quds Force, a special branch of Iran's Revolutionary Guards, is training, funding and arming the Iraqi groups. […] It shows how Iranian operatives are using Lebanese surrogates to create Hezbollah-like capabilities. And it paints a picture of the level of effort in funding and arming extremist groups in Iraq…. The groups operate throughout Iraq. They planned and executed a string of bombings, kidnappings, sectarian murders and more against Iraqi citizens, Iraqi forces and coalition personnel. They receive arms -- including explosively formed penetrators, the most deadly form of improvised explosive device -- and funding from Iran. They also have received planning help and orders from Iran.

78.     In May 2007, the Commander of the Multinational Division-Center, U.S. Army Major General Richard Lynch, commented that "[m]ost of our casualties have come from improvised explosive devices. That's still the primary threat to our soldiers -- IEDs. And we have an aggressive campaign to counter those IEDs, but they still are taking a toll on our soldiers: 13 killed, 39 soldiers wounded. *What we're finding is that the technology and the financing*

*and the training of the explosively formed penetrators are coming from Iran.* The EFPs are killing

our soldiers, and we can trace that back to Iran." (emphasis added.)

79.     According to the U.S. State Department's 2007 Country Reports on Terrorism:

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to some Iraqi militant groups that target Coalition and Iraqi security forces and Iraqi civilians. In this way, Iranian government forces have been responsible for attacks on Coalition forces. The Islamic Revolutionary Guard Corps (IRGC)-Qods Force, continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces. The Qods Force, in concert with Lebanese Hezbollah, provided training outside Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry. These individuals then passed on this training to additional militants inside Iraq, a "train- the-trainer" program. In addition, the Qods Force and Hezbollah have also provided training inside Iraq. In fact, Coalition Forces captured a Lebanese Hezbollah operative in Iraq in 2007.

80.     Other U.S. Government reports, such as the Department of Defense's December 2007 "Measuring Stability and Security in Iraq" quarterly report to Congress, similarly concluded that:

> Iranian Islamic Revolutionary Guard Corps - Qods Force (IRGC-QF) efforts to train, equip, and fund Shi'a extremists also continue despite reported assurances to Prime Minister Maliki that Iran will cease lethal aid.

81.      These observations continued in 2008. According to the U.S. State Department's 2008 Country Reports on Terrorism:

> The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hezbollah, Iraq-based militants, and Taliban fighters in Afghanistan …

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons,

training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians. Iran's Qods Force continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, and mortars that have killed Iraqi and Coalition Forces as well as civilians. Tehran was responsible for some of the lethality of anti-Coalition attacks by providing militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles. The Qods Force, in concert with Lebanese Hezbollah, provided training both inside and outside of Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry.

### D.    IMPROVISED ROCKET ASSISTED MUNITIONS (IRAMs)

82.    Along with EFPs, Improvised Rocket Assisted Munitions were a signature weapon of Shi'a militias in Iraq that were supplied by the Iranian Revolutionary Guard Corps.

83.    An IRAM is a rocket-fired improvised explosive device made from a large metal canister – such as a propane gas tank – filled with explosives, scrap metal and ball bearings and propelled by rockets, most commonly 107 mm rockets launched from fixed or mobile sites by remote control. They are designed to cause catastrophic damage and inflict mass casualties

84.    According to The Joint Improvised Explosive Device Defeat Organization (JIEDDO) of the U.S. Department of Defense, IRAMs were first introduced by Iran in November 2007 against U.S. personnel in Iraq.

85.    Although Iran's use of IRAMs was publicly disclosed by U.S. officials after their introduction in 2007, systematic identification of *specific* attacks as IRAM attacks was not publicly disclosed until 2010.

86.    IRAM attacks occurred primarily in Baghdad and in the Shi'a dominated areas in southern Iraq, where Iranian-backed militias primarily operate.

87.    All of the foregoing support from Iran and its agents for attacks on Coalition Forces and Iraqi civilians was financed and facilitated in substantial part by material support in the form of funds transfers initiated by Iran through Iranian banks on behalf of and for the benefit

of Hezbollah and other agents of Iran's IRGC.

## V.    **THE PLAINTIFFS**

### ATTACK 1:  JULY 15, 2005 – KIRKUK, IRAQ

#### A.  **The Donaldson Family**

88.    Plaintiff James Donaldson is a citizen of the United States and domiciled in the State of Idaho.

89.    On July 15, 2005, Plaintiff James Donaldson, was serving in the U.S. military in Iraq.

90.    Plaintiff James Donaldson was injured when an EFP exploded near his vehicle.

91.    The weapon used to injure Plaintiff James Donaldson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

92.    As a result of the attack, Plaintiff James Donaldson has lost both legs, the right leg below the knee and the left leg above the knee.

93.    As a result of the attack, and the injuries he suffered, Plaintiff James Donaldson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### ATTACK 2:  JULY 27, 2005 – ASHRAF, IRAQ

#### B.  **The Butler Family**

94.    Adrian Butler was a citizen of the United States when he was killed in Iraq.

95.    On July 27, 2005, Adrian Butler, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

96.    Adrian Butler was killed in the attack.

97.    The weapon used to kill Adrian Butler was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

98.    Plaintiff Peggy Donaldson is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Adrian Butler.

99.    Plaintiff Eldridge Butler is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Adrian Butler.

100.     Plaintiff Peggy Donaldson brings an action individually and on behalf of the Estate of Adrian Butler, as its legal representative.

101.     As a result of the attack, and the death of Adrian Butler, Plaintiffs Peggy Donaldson and Eldridge Butler have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son and brother's society, companionship, comfort, advice and counsel.

### ATTACK 3:   DECEMBER 4, 2005 – BAGHDAD, IRAQ

### C.  The Schild Family

102.     Richard Schild was a citizen of the United States when he was killed in Iraq.

103.     On December 4, 2005, Richard Schild, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

104.     Richard Schild was killed in the attack.

105.     The weapon used to kill Richard Schild was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

106.     Plaintiff Kay Schild is a citizen of the United States and domiciled in the State of South Dakota. She is the widow of Richard Schild.

107.     Plaintiff, K.S., a minor, represented by his legal guardian Kay Schild, is a citizen of the United States and domiciled in the State of South Dakota. He is the son of Richard Schild.

108.     Plaintiff Keely Schild is a citizen of the United States and domiciled in the State of South Dakota. She is the daughter of Richard Schild.

109.     Plaintiff Bruce Schild is a citizen of the United States and domiciled in the State of South Dakota. He is the brother of Richard Schild.

110.     Plaintiff Kay Schild brings an action individually and on behalf of the Estate of Richard Schild, as its legal representative.

111.     As a result of the attack, and the death of Richard Schild, Plaintiffs Kay Schild, K.S., a minor, Keely Schild, and Bruce Schild, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband, father and brother's society,

companionship, comfort, advice and counsel.

### ATTACK 4:   APRIL 20, 2006 – BAGHDAD, IRAQ

### D.  The Teeters Family

112.     Brandon Teeters was a citizen of the United States when he was killed in Iraq.

113.     On April 20, 2005, Brandon Teeters, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

114.     Brandon Teeters was killed in the attack.

115.     The weapon used to kill Brandon Teeters was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

116.     Plaintiff Tammy Richard is a citizen of the United States and domiciled in the State of Louisiana. She is the mother of Brandon Teeters.

117.     Plaintiff Glen Richard is a citizen of the United States and domiciled in the State of Louisiana. He is the father of Brandon Teeters.

118.     Plaintiff Heather Richard is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Brandon Teeters.

119.     Plaintiff Tammy Richard brings an action individually and on behalf of the Estate of Brandon Teeters, as its legal representative.

120.     As a result of the attack, and the death of Brandon Teeters, Plaintiffs Tammy Richard, Glen Richard and Heather Richard, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son, and brother's society, companionship, comfort, advice and counsel.

### ATTACK 5:   JULY 2, 2006 – KIRKUK, IRAQ

### E.  The Paupore Family

121.     Plaintiff Joe Paupore is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Nicholas Paupore.

122.     On July 2, 2006, Nicholas Paupore, was serving in the U.S. military in Iraq.

123.    Nicholas Paupore was injured when an EFP exploded near his vehicle.

124.    The weapon used to injure Nicholas Paupore was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

125.    As a result of the attack, Nicholas Paupore has lost his right leg, below the knee.

126.    As a result of the attack, and the injuries suffered by Nicholas Paupore, Plaintiff Joe Paupore has experienced severe mental anguish and extreme emotional pain and suffering.

127.    Nicholas Paupore and other family members of his are included in a prior lawsuit filed in The United States District Court for the District of Columbia titled Martinez, et al. v. Islamic Republic of Iran; Case No.: 1:16-cv-02193.

### ATTACK 6:   SEPTEMBER 12, 2006 – AL KIFL, IRAQ

### F.  The Perez Family

128.    Emily Perez was a citizen of the United States when she was killed in Iraq.

129.    On September 12, 2006, Emily Perez, was serving in the U.S. military in Iraq when an EFP detonated near her vehicle.

130.    Emily Perez was killed in the attack.

131.    The weapon used to kill Emily Perez was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

132.    Plaintiff Vicki Perez is a citizen of the United States and domiciled in Germany. She is the mother of Emily Perez.

133.    Plaintiff Daniel Perez is a citizen of the United States and domiciled in Germany. He is the father of Emily Perez.

134.    Plaintiff Vicki Perez brings an action individually and on behalf of the Estate of Emily Perez, as its legal representative.

135.    As a result of the attack, and the death of Emily Perez, Plaintiffs Vicki Perez and Daniel Perez, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their daughter's society, companionship, comfort, advice and counsel.

**ATTACK 7:   OCTOBER 11, 2006 – SADR CITY - BAGHDAD, IRAQ**

### G.  The Beem Family

136.    Plaintiff Brian Beem is a citizen of the United States and domiciled in the State of Idaho.

137.    On October 11, 2006, Plaintiff Brian Beem, was serving in the U.S. military in Iraq.

138.    Plaintiff Brian Beem was injured when an EFP exploded near his vehicle.

139.    The weapon used to injure Plaintiff Brian Beem was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

140.    As a result of the attack, Plaintiff Brian Beem has lost his right legs, below the knee.

141.    Plaintiff Elizabeth Beem is a citizen of the United States and domiciled in Virginia. She is the wife of Brian Beem.

142.    Plaintiff Diane Beem is a citizen of the United States and domiciled in Virginia. She is the mother of Brian Beem.

143.    Plaintiff Joseph Beem is a citizen of the United States and domiciled in Virginia. He is the father of Brian Beem.

144.    Plaintiff Cassandra Beem is a citizen of the United States and domiciled in Virginia. She is the daughter of Brian Beem.

145.    Plaintiff Kaitlyn Beem is a citizen of the United States and domiciled in Virginia. She is the daughter of Brian Beem.

146.    Plaintiff, K.B., a minor, represented by her legal guardian Brian Beem, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Brian Beem.

147.    Plaintiff Joseph Beem, Jr. is a citizen of the United States and domiciled in Virginia. He is the brother of Brian Beem.

148.    Plaintiff Cynthia Colón is a citizen of the United States and domiciled in Virginia. She is the sister of Brian Beem.

149.    As a result of the attack, and the injuries he suffered, Plaintiff Brian Beem has

experienced severe physical and mental anguish and extreme emotional pain and suffering.

150.   As a result of the attack, and the injuries suffered by Brian Beem, Plaintiffs Elizabeth Beem, Diane Beem, Joseph Beem, Cassandra Beem, Kaitlyn Beem, K.B., a minor, Joseph Beem, Jr. and Cynthia Colón have experienced severe mental anguish and extreme emotional pain and suffering.

**ATTACK 8:   OCTOBER 16, 2006 – {city}, IRAQ**

**H.  The Byers Family**

151.   Plaintiff Brandon Byers is a citizen of the United States and domiciled in the State of Texas.

152.   On October 16, 2006, Plaintiff Brandon Byers, was serving in the U.S. military in Iraq.

153.   Plaintiff Brandon Byers was injured when an EFP exploded near his vehicle.

154.   The weapon used to injure Plaintiff Brandon Byers was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

155.   As a result of the attack, Plaintiff Brandon Byers has lost his left legs and sustained severe injuries to his right dominant hand.

156.   Plaintiff Megan Byers is a citizen of the United States and domiciled in Texas. She is the wife of Brandon Byers.

157.   Plaintiff, C.B., a minor, represented by her legal guardian Brandon Byers, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Brandon Byers.

158.   As a result of the attack, and the injuries he suffered, Plaintiff Brandon Byers has experienced severe physical and mental anguish and extreme emotional pain and suffering.

159.   As a result of the attack, and the injuries suffered by Brandon Byers, Plaintiffs Megan Byers, and C.B., a minor have experienced severe mental anguish and extreme emotional pain and suffering.

**ATTACK 9:   NOVEMBER 25, 2006 – AL JUDIAH, IRAQ**

### I.   **The Morris Family**

160.    Daniel Morris was a citizen of the United States when he was killed in Iraq.

161.    On November 25, 2006, Daniel Morris, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

162.    Daniel Morris was killed in the attack.

163.    The weapon used to kill Daniel Morris was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

164.    Plaintiff Amy Morris is a citizen of the United States and domiciled in the state of Tennessee. She is the mother of Daniel Morris.

165.    Plaintiff Glenn Morris is a citizen of the United States and domiciled in the state of Tennessee. He is the father of Daniel Morris.

166.    Plaintiff Adam Morris is a citizen of the United States and domiciled in the state of Tennessee. He is the brother of Daniel Morris.

167.    Plaintiff Cassidy Morris is a citizen of the United States and domiciled in the state of Tennessee. She is the sister of Daniel Morris.

168.    Plaintiff Amy Morris brings an action individually and on behalf of the Estate of Daniel Morris, as its legal representative.

169.    As a result of the attack, and the death of Daniel Morris, Plaintiffs Amy Morris, Glenn Morris, Cassidy Morris and Adam Morris, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son and brothers' society, companionship, comfort, advice and counsel.

### ATTACK 10: DECEMBER 6, 2006 – HAWIJAH, IRAQ

### J.   **The Mokri Family**

170.    Yari Mokri was a citizen of the United States when he was killed in Iraq.

171.    On December 6, 2006, Yari Mokri, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

172.    Yari Mokri was killed in the attack.

173.    The weapon used to kill Yari Mokri was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

174.    Plaintiff Donna Mokri is a citizen of the United States and domiciled in the state of Texas. She is the mother of Yari Mokri.

175.    Plaintiff Mohammed Mokri is a citizen of the United States and domiciled in the state of Texas. He is the father of Yari Mokri.

176.    As a result of the attack, and the death of Yari Mokri, Plaintiffs Donna Mokri and Mohammed Mokri, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son's society, companionship, comfort, advice and counsel.

177.    Yari Mokri and other family members of his are included in a prior lawsuit filed in The United States District Court for the District of Columbia titled Martinez, et al. v. Islamic Republic of Iran; Case No.: 1:16-cv-02193.

### ATTACK 11: DECEMBER 25, 2006 – BAGHDAD, IRAQ

### K.  The Nelson Family

178.    Andrew Nelson was a citizen of the United States when he was killed in Iraq.

179.    On December 25, 2006, Andrew Nelson, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

180.    Andrew Nelson was killed in the attack.

181.    The weapon used to kill Andrew Nelson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

182.    Plaintiff Kristi Pearson is a citizen of the United States and domiciled in the state of Minnesota. She is the widow of Andrew Nelson.

183.    Plaintiff Kristi Pearson brings an action individually and on behalf of the Estate of Andrew Nelson, as its legal representative.

184.    As a result of the attack, and the death of Andrew Nelson, Plaintiff Kristi Pearson

has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her

husband's society, companionship, comfort, advice and counsel.

**L.  The Preston Family**

185.    Aaron Preston was a citizen of the United States when he was killed in Iraq.

186.    On December 25, 2006, Aaron Preston, was serving in the U.S. military in Iraq when

an EFP detonated near his vehicle.

187.    Aaron Preston was killed in the attack.

188.    The weapon used to kill Aaron Preston was an Iranian-manufactured EFP provided

to Iranian-funded and -trained terror operatives in Iraq.

189.    Plaintiff Mariah Coward is a citizen of the United States and domiciled in the state

of Minnesota. She is the sister of Aaron Preston.

190.    Plaintiff Mariah Coward brings an action individually and on behalf of the Estate of

Aaron Preston, as its anticipated legal representative.

191.    As a result of the attack, and the death of Aaron Preston, Plaintiff Mariah Coward

has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her

brother's society, companionship, comfort, advice and counsel.

**ATTACK 12: JANUARY 22, 2007 – BAGHDAD, IRAQ**

**M.  The Stout Family**

192.    Brandon Stout was a citizen of the United States when he was killed in Iraq.

193.    On January 22, 2007, Brandon Stout, was serving in the U.S. military in Iraq when

an EFP detonated near his vehicle.

194.    Brandon Stout was killed in the attack.

195.    The weapon used to kill Brandon Stout was an Iranian-manufactured EFP provided

to Iranian-funded and -trained terror operatives in Iraq.

196.    Plaintiff Aubrey Barber is a citizen of the United States and domiciled in the state of

Michigan. She is the widow of Brandon Stout.

197.     Plaintiff Aubrey Barber brings an action individually and on behalf of the Estate of Brandon Stout, as its legal representative.

198.     As a result of the attack, and the death of Brandon Stout, Plaintiff Aubrey Barber has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her husband's society, companionship, comfort, advice and counsel.

### N.  **The Wager Family**

199.     Plaintiff Michelle Wager is a citizen of the United States and domiciled in the State of Michigan.

200.     On January 22, 2007, Plaintiff Michelle Wager, was serving in the U.S. military in Iraq.

201.     Plaintiff Michelle Wager was injured when an EFP exploded near her vehicle.

202.     The weapon used to injure Plaintiff Michelle Wager was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

203.     As a result of the attack, Plaintiff Michelle Wager has a severely damaged right leg and lost her left leg.

204.     As a result of the attack, and the injuries she suffered, Plaintiff Michelle Wager has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### ATTACK 13: MARCH 5, 2007 – BAQUBAH, IRAQ

### O.  **The Harris Family**

205.     Blake Harris was a citizen of the United States when he was killed in Iraq.

206.     On March 5, 2007, Blake Harris, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

207.     Blake Harris was killed in the attack.

208.     The weapon used to kill Blake Harris was an Iranian-manufactured EFP provided to

Iranian-funded and -trained terror operatives in Iraq.

209.    Plaintiff Deborah Harris is a citizen of the United States and domiciled in the state of Colorado. She is the mother of Blake Harris.

210.    Plaintiff Deborah Harris brings an action individually and on behalf of the Estate of Blake Harris, as its legal representative.

211.    As a result of the attack, and the death of Blake Harris, Plaintiff Deborah Harris has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her son's society, companionship, comfort, advice and counsel.

### ATTACK 14: MAY 19, 2007 – AL DIWANIYAH, IRAQ

#### P.  The Schumann Family

212.    Jason Schumann was a citizen of the United States when he was killed in Iraq.

213.    On May19, 2007, Jason Schumann, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

214.    Jason Schumann was killed in the attack.

215.    The weapon used to kill Jason Schumann was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

216.    Plaintiff Jim Schumann is a citizen of the United States and domiciled in the state of Minnesota. He is the father of Jason Schumann.

217.    Plaintiff Jim Schumann brings an action individually and on behalf of the Estate of Jason Schumann, as its legal representative.

218.    As a result of the attack, and the death of Jason Schumann, Plaintiff Jim Schumann has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of his son's society, companionship, comfort, advice and counsel.

### ATTACK 15: MAY 29, 2007 – BAGHDAD, IRAQ

#### Q.  The Hancock Family

219.    Plaintiff Jerral Hancock is a citizen of the United States and domiciled in the State

of California.

220.    On May 29, 2007, Plaintiff Jerral Hancock, was serving in the U.S. military in Iraq.

221.    Plaintiff Jerral Hancock was injured when an EFP exploded near his vehicle.

222.    The weapon used to injure Plaintiff Jerral Hancock was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

223.    As a result of the attack, Plaintiff Jerral Hancock has lost his left arm and is paralyzed from the chest down.

224.    Plaintiff, J.H., a minor, represented by his legal guardian Jerral Hancock, is a citizen of the United States and domiciled in the State of California. He is the son of Jerral Hancock.

225.    Plaintiff, A.H., a minor, represented by her legal guardian Jerral Hancock, is a citizen of the United States and domiciled in the State of California. She is the daughter of Jerral Hancock.

226.    Plaintiff Stacie Tscherny is a citizen of the United States and domiciled in California. She is the mother of Jerral Hancock.

227.    Plaintiff Dirrick Benjamin is a citizen of the United States and domiciled in California. He is the father of Jerral Hancock.

228.    Plaintiff Savannah Tscherny is a citizen of the United States and domiciled in California. She is the sister of Jerral Hancock.

229.    As a result of the attack, and the injuries he suffered, Plaintiff Jerral Hancock has experienced severe physical and mental anguish and extreme emotional pain and suffering.

230.    As a result of the attack, and the injuries suffered by Jerral Hancock, Plaintiffs J.H., a minor, A.H., a minor, Stacie Tscherny, Dirrick Benjamin and Savannah Tscherny have experienced severe mental anguish and extreme emotional pain and suffering.

**ATTACK 16: JUNE 6, 2007 – BAGHDAD, IRAQ**

**R.  The Gajdos Family**

231.    Shawn Gadjos was a citizen of the United States when he was killed in Iraq.

232.    On June 6, 2007, Shawn Gadjos, was serving in the U.S. military in Iraq when an

EFP detonated near his vehicle.

233.    Shawn Gadjos was killed in the attack.

234.    The weapon used to kill Shawn Gadjos was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

235.    Plaintiff Brenda Richards is a citizen of the United States and domiciled in the state of Michigan. She is the mother of Shawn Gadjos.

236.    Plaintiff Brenda Richards brings an action individually and on behalf of the Estate of Shawn Gadjos, as its legal representative.

237.    As a result of the attack, and the death of Shawn Gadjos, Plaintiff Brenda Richards has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her son's society, companionship, comfort, advice and counsel.

### ATTACK 17: JUNE 11, 2007 – BAGHDAD, IRAQ

### S.  The Payne Family

238.    Cameron Payne was a citizen of the United States when he was killed in Iraq.

239.    On June 11, 2007, Cameron Payne, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

240.    Cameron Payne was killed in the attack.

241.    The weapon used to kill Cameron Payne was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

242.    Plaintiff Julie Payne is a citizen of the United States and domiciled in the state of California. She is the widow of Cameron Payne.

243.    Plaintiff, A.L.P., a minor, represented by her legal guardian Julie Payne, is a citizen of the United States and domiciled in the State of California. She is the daughter of Cameron Payne.

244.    Plaintiff, K.P., a minor, represented by her legal guardian Julie Payne, is a citizen of the United States and domiciled in the State of California. She is the daughter of Cameron Payne.

245.    Plaintiff Julie Payne brings an action individually and on behalf of the Estate of

Cameron Payne, as its legal representative.

246.    As a result of the attack, and the death of Cameron Payne, Plaintiff Julie Payne, A.L.P., a minor and K.P., a minor, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband and father's society, companionship, comfort, advice and counsel.

### ATTACK 18: JUNE 19, 2007 – MUHAMMAD AL ALI - BAGHDAD, IRAQ

### T.  The Zapfe Family

247.    William Zapfe was a citizen of the United States when he was killed in Iraq.

248.    On June 19, 2007, William Zapfe, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

249.    William Zapfe was killed in the attack.

250.    The weapon used to kill William Zapfe was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

251.    Plaintiff Conietha Zapfe is a citizen of the United States and domiciled in the state of Kentucky. She is the widow of William Zapfe.

252.    Plaintiff, C.Z., a minor, represented by his legal guardian Conietha Zapfe, is a citizen of the United States and domiciled in the State of Kentucky. He is the son of William Zapfe.

253.    Plaintiff, S.Z., a minor, represented by his legal guardian Conietha Zapfe, is a citizen of the United States and domiciled in the State of Kentucky. He is the son of William Zapfe.

254.    Plaintiff, A.Z., a minor, represented by her legal guardian Conietha Zapfe, is a citizen of the United States and domiciled in the State of Kentucky. She is the daughter of William Zapfe.

255.    Plaintiff Conietha Zapfe brings an action individually and on behalf of the Estate of William Zapfe, as its legal representative.

256.    As a result of the attack, and the death of William Zapfe, Plaintiffs Conietha Zapfe, C.Z., a minor, S.Z., a minor and A.Z, a minor, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband and father's society, companionship,

comfort, advice and counsel.

257.   William Zapfe and other family members of his are included in a prior lawsuit filed in The United States District Court for the District of Columbia titled Martinez, et al. v. Islamic Republic of Iran; Case No.: 1:16-cv-02193.

## ATTACK 19: JULY 6, 2007 – BAGHDAD, IRAQ

### U.  The Wilson Family

258.   LeRon Wilson was a citizen of the United States when he was killed in Iraq.

259.   On July 6, 2007, LeRon Wilson, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

260.   LeRon Wilson was killed in the attack.

261.   The weapon used to kill LeRon Wilson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

262.   Plaintiff Simona Francis is a citizen of the United States and domiciled in the state of New York. She is the mother of LeRon Wilson.

263.   Plaintiff Simona Francis brings an action individually and on behalf of the Estate of LeRon Wilson, as its legal representative.

264.   As a result of the attack, and the death of LeRon Wilson, Plaintiff Simons Francis has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her son's society, companionship, comfort, advice and counsel.

## ATTACK 20: JULY 31, 2007 – BAGHDAD, IRAQ

### V.  The Gonzalez Family

265.   Zachariah Gonzalez was a citizen of the United States when he was killed in Iraq.

266.   On July 31, 2007, Zachariah Gonzalez, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

267.   Zachariah Gonzalez was killed in the attack.

268.    The weapon used to kill Zachariah Gonzalez was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

269.    Plaintiff Laura Gonzalez is a citizen of the United States and domiciled in the state of Indiana. She is the mother of Zachariah Gonzalez.

270.    Plaintiff Benedict Gonzalez is a citizen of the United States and domiciled in the state of Indiana. He is the father of Zachariah Gonzalez.

271.    Plaintiff Laura Gonzalez brings an action individually and on behalf of the Estate of Zachariah Gonzalez, as its legal representative.

272.    As a result of the attack, and the death of Zachariah Gonzalez, Plaintiffs Laura Gonzalez and Benedict Gonzalez have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son's society, companionship, comfort, advice and counsel.

### ATTACK 21: AUGUST 13, 2007 – QARRAYAH, IRAQ

### W. The Cottrell Family

273.    Eric Cottrell was a citizen of the United States when he was killed in Iraq.

274.    On August 13, 2007, Eric Cottrell, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

275.    Eric Cottrell was killed in the attack.

276.    The weapon used to kill Eric Cottrell was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

277.    Plaintiff Doeshie Waters is a citizen of the United States and domiciled in the state of California. She is the mother of Eric Cottrell.

278.    Plaintiff Norris Waters, Jr. is a citizen of the United States and domiciled in the state of California. He is the father of Eric Cottrell.

279.    Plaintiff Doeshie Waters brings an action individually and on behalf of the Estate of Eric Cottrell, as its legal representative.

280.    As a result of the attack, and the death of Eric Cottrell, Plaintiffs Doeshie Waters and

Norris Waters, Jr. have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son's society, companionship, comfort, advice and counsel.

### ATTACK 22: AUGUST 17, 2007 – BAGHDAD, IRAQ

### X.  The Edds Family

281.    Jonathan Edds was a citizen of the United States when he was killed in Iraq.

282.    On August 17, 2007, Jonathan Edds, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

283.    Jonathan Edds was killed in the attack.

284.    The weapon used to kill Jonathan Edds was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

285.    Plaintiff Julia Edds is a citizen of the United States and domiciled in the state of Michigan. She is the mother of Jonathan Edds.

286.    Plaintiff Barry Edds is a citizen of the United States and domiciled in the state of Michigan. He is the father of Jonathan Edds.

287.    Plaintiff Joel Edds is a citizen of the United States and domiciled in the state of Michigan. He is the brother of Jonathan Edds.

288.    Plaintiff Julia Edds brings an action individually and on behalf of the Estate of Jonathan Edds, as its legal representative.

289.    As a result of the attack, and the death of Jonathan Edds, Plaintiffs Julia Edds, Barry Edds and Joel Edds have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son and brother's society, companionship, comfort, advice and counsel.

### ATTACK 23: SEPTEMBER 20, 2007 – MUQDADIYAH, IRAQ

### Y.  The Marciante Family

290.    Luigi Marciante, Jr. was a citizen of the United States when he was killed in Iraq.

291.    On September 20, 2007, Luigi Marciante, Jr., was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

292.    Luigi Marciante, Jr. was killed in the attack.

293.    The weapon used to kill Luigi Marciante, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

294.    Plaintiff Stephanie Marciante is a citizen of the United States and domiciled in the state of New Jersey. She is the widow of Luigi Marciante, Jr.

295.    Plaintiff, L.M., a minor, represented by his legal guardian Stephanie Marciante is a citizen of the United States and domiciled in the State of New Jersey. He is the son of Luigi Marciante, Jr.

296.    Plaintiff Maria Marciante is a citizen of the United States and domiciled in the state of New Jersey. She is the mother of Luigi Marciante, Jr.

297.    Plaintiff Luigi Marciante is a citizen of the United States and domiciled in the state of New Jersey. He is the father of Luigi Marciante, Jr.

298.    Plaintiff Enza Balestrieri is a citizen of the United States and domiciled in the state of New Jersey. She is the sister of Luigi Marciante, Jr.

299.    Plaintiff Stephanie Marciante brings an action individually and on behalf of the Estate of Luigi Marciante, Jr., as its legal representative.

300.    As a result of the attack, and the death of Luigi Marciante, Jr., Plaintiffs Stephanie Marciante, L.M., a minor, Maria Marciante, Luigi Marciante, and Enza Balestrieri have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son, father, and brother's society, companionship, comfort, advice and counsel.

**ATTACK 24: DECEMBER 17, 2007 – BAGHDAD, IRAQ**

**Z.  The Wagner Family**

301.    Plaintiff Bryan Wagner is a citizen of the United States and domiciled in the State of Florida.

302.    On December 17, 2007, Plaintiff Bryan Wagner, was serving in the U.S. military in Iraq.

303.    Plaintiff Bryan Wagner was injured when an EFP exploded near his vehicle.

304.    The weapon used to injure Plaintiff Bryan Wagner was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

305.    As a result of the attack, Plaintiff Bryan Wagner has lost his right leg, below the knee.

306.    As a result of the attack, and the injuries he suffered, Plaintiff Bryan Wagner has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### ATTACK 25: JANUARY 25, 2008 – BAGHDAD, IRAQ

### AA.    The Crookston Family

307.    Duncan Crookston was a citizen of the United States when he was killed in Iraq.

308.    On January 25, 2008, Duncan Crookston, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

309.    Duncan Crookston was killed in the attack.

310.    The weapon used to kill Duncan Crookston was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

311.    Plaintiff Leesha Crookston is a citizen of the United States and domiciled in the state of Colorado. She is the mother of Duncan Crookston.

312.    Plaintiff Leesha Crookston brings an action individually and on behalf of the Estate of Duncan Crookston, as its legal representative.

313.    As a result of the attack, and the death of Duncan Crookston, Plaintiff Leesha Crookston has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of her son's society, companionship, comfort, advice and counsel.

### ATTACK 26: MARCH 14, 2008 –BAGHDAD CITY, IRAQ

### BB.    The Knapp Family

314.    David Alex Knapp was a citizen of the United States when he was killed in Iraq.

315.    On March 14, 2008, David Alex Knapp, was serving in the U.S. military in Iraq when

an EFP detonated near his vehicle.

316.    David Alex Knapp was killed in the attack.

317.    The weapon used to kill David Alex Knapp was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

318.    Plaintiff Jeanette Knapp is a citizen of the United States and domiciled in the state of Florida. She is the mother of David Alex Knapp.

319.    Plaintiff Jeanette Knapp brings an action individually and on behalf of the Estate of David Alex Knapp, as its legal representative.

320.    As a result of the attack, and the death of David Alex Knapp, Plaintiffs Jeanette Knapp has experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband, father, son and brother's society, companionship, comfort, advice and counsel.

### ATTACK 27: MARCH 29, 2008 – BAGHDAD, IRAQ

### CC.    The Hanley Family

321.    Plaintiff Patrick Hanley is a citizen of the United States and domiciled in the State of Virginia.

322.    On March 29, 2008, Plaintiff Patrick Hanley, was serving in the U.S. military in Iraq.

323.    Plaintiff Patrick Hanley was injured when an EFP exploded near his vehicle.

324.    The weapon used to injure Plaintiff Patrick Hanley was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

325.    As a result of the attack, Plaintiff Patrick Hanley has lost his left arm and suffers from post-traumatic stress disorder (PTSD).

326.    Plaintiff Katherine Hanley is a citizen of the United States and domiciled in Virginia. She is the mother of Patrick Hanley.

327.    Plaintiff Edward Hanley is a citizen of the United States and domiciled in Virginia. He is the father of Patrick Hanley.

328.    As a result of the attack, and the injuries he suffered, Plaintiff Patrick Hanley has

experienced severe physical and mental anguish and extreme emotional pain and suffering.

329.   As a result of the attack, and the injuries suffered by Patrick Hanley, Plaintiffs Katherine Hanley and Edward Hanley have experienced severe mental anguish and extreme emotional pain and suffering.

## ATTACK 28: APRIL 8, 2008 – BAGHDAD, IRAQ

### DD.   The Rosenberg Family

330.   Mark Rosenberg was a citizen of the United States when he was killed in Iraq.

331.   On April 8, 2008, Mark Rosenberg, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

332.   Mark Rosenberg was killed in the attack.

333.   The weapon used to kill Mark Rosenberg was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

334.   Plaintiff Julie Rosenberg is a citizen of the United States and domiciled in the state of Colorado. She is the widow of Mark Rosenberg.

335.   Plaintiff, J.R., a minor, represented by his legal guardian Julie Rosenberg is a citizen of the United States and domiciled in the State of Colorado. He is the son of Mark Rosenberg.

336.   Plaintiff, M.R., a minor, represented by his legal guardian Julie Rosenberg is a citizen of the United States and domiciled in the State of Colorado. He is the son of Mark Rosenberg.

337.   Plaintiff Julie Rosenberg brings an action individually and on behalf of the Estate of Mark Rosenberg, as its legal representative.

338.   As a result of the attack, and the death of Mark Rosenberg, Plaintiffs Julie Rosenberg, J.R., a minor and M.R., a minor, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband and father's society, companionship, comfort, advice and counsel.

## ATTACK 29: APRIL 14, 2008 –  NORTHEASTERN BAGHDAD, IRAQ

### EE.   The Richard Family

339.     Joseph Richard, III was a citizen of the United States when he was killed in Iraq.

340.     On April 14, 2008, Joseph Richard, III, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

341.     Joseph Richard, III was killed in the attack.

342.     The weapon used to kill Joseph Richard, III was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

343.     Plaintiff Lois Richard is a citizen of the United States and domiciled in the state of Louisiana. She is the mother of Joseph Richard, III.

344.     Plaintiff Joseph Richard, Jr. is a citizen of the United States and domiciled in the state of Louisiana. He is the father of Joseph Richard, III.

345.     Plaintiff Carmen Richard Billedeaux is a citizen of the United States and domiciled in the state of Louisiana. She is the sisiter of Joseph Richard, III.

346.     Plaintiff Lois Richard brings an action individually and on behalf of the Estate of Joseph Richard, III, as its legal representative.

347.     As a result of the attack, and the death of Joseph Richard, III, Plaintiffs Lois Richard, Joseph Richard, Jr. and Carmen Richard Billedeaux, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their son and brother's society, companionship, comfort, advice and counsel.

**ATTACK 30: AUGUST 9, 2008 – SADR CITY - BAGHDAD, IRAQ**

**FF.** **The Ulloa Family**

348.     Jose Ulloa was a citizen of the United States when he was killed in Iraq.

349.     On August 9, 2008, Jose Ulloa, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

350.     Jose Ulloa was killed in the attack.

351.     The weapon used to kill Jose Ulloa was an Iranian-manufactured EFP provided to

Iranian-funded and -trained terror operatives in Iraq.

352.     Plaintiff Melanie Aztmann is a citizen of the United States and domiciled in the state of New York. She is the widow of Jose Ulloa.

353.     Plaintiff, S.U., a minor, represented by his legal guardian Melanie Aztmann is a citizen of the United States and domiciled in the State of New York. He is the son of Jose Ulloa.

354.     Plaintiff Francisca Marmol is a citizen of the United States and domiciled in the state of New York. She is the biological sister and legal guardian of Jose Ulloa.

355.     Plaintiff Jose Ulloa, Sr. is a citizen of the United States and domiciled in the state of New York. He is the father of Jose Ulloa.

356.     Plaintiff Ruberterna Ulloa, Sr. is a citizen of the United States and domiciled in the state of New York. She is the sister of Jose Ulloa.

357.     Plaintiff Stephanie Marmol is a citizen of the United States and domiciled in the state of New York. She is the sister of Jose Ulloa.

358.     Plaintiff Melanie Aztmann brings an action individually and on behalf of the Estate of Jose Ulloa, as its legal representative.

359.     As a result of the attack, and the death of Jose Ulloa, Plaintiffs Melanie Aztmann, S.U., a minor, Francisca Marmol, Jose Ulloa, Sr., Ruberterna Ulloa, Sr., and Stephanie Marmol, have experienced severe mental anguish, extreme emotional pain and suffering, and the loss of their husband, father, son and brother's society, companionship, comfort, advice and counsel.

**ATTACK 31: AUGUST 4, 2010 – NAJAF, IRAQ**

**GG.**   **The Craven Family**

360.     Plaintiff Josh Craven is a citizen of the United States and domiciled in the State of North Carolina.

361.     On August 4, 2010, Plaintiff Josh Craven, was serving in the U.S. military in Iraq.

362.     Plaintiff Josh Craven was injured when an EFP exploded near his vehicle.

363.     The weapon used to injure Plaintiff Josh Craven was an Iranian-manufactured EFP

provided to Iranian-funded and -trained terror operatives in Iraq.

364.    As a result of the attack, Plaintiff Josh Craven has lost his left leg and has a paralyzed

right leg.

365.    Plaintiff Holly Craven is a citizen of the United States and domiciled in North

Carolina. She is the wife of Josh Craven.

366.    As a result of the attack, and the injuries he suffered, Plaintiff Josh Craven has

experienced severe physical and mental anguish and extreme emotional pain and suffering.

367.    As a result of the attack, and the injuries suffered by Josh Craven, Plaintiff Holly

Craven has experienced severe mental anguish and extreme emotional pain and suffering.


## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**AGAINST DEFENDANT ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN
WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM
FOR DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL
KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN PERSONAL
INJURY UNDER 28 U.S.C. §1605A(c)**

368.    Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

369.    Plaintiffs identified in the foregoing paragraphs were grievously injured by

Defendant's provision of material support (within the meaning of §1605A(h)(3)) to terror operatives

in Iraq who engaged in extrajudicial killing and who injured Plaintiffs.

370.    As a direct and proximate result of the willful, wrongful, and intentional acts of

Defendant and its agents, Plaintiffs identified in the foregoing paragraphs were injured and endured

severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and economic

losses.

371.    Plaintiffs' compensatory damages include, but not limited to, their severe physical

injuries, extreme mental anguish, pain and suffering, loss of solatium, and any economic

losses determined by the trier of fact.

372.    The conduct of Defendant was criminal, outrageous, extreme, wanton, willful, malicious, and a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

## SECOND CLAIM FOR RELIEF
### AGAINST DEFENDANT ON BEHALF OF THE ESTATES OF PLAINTIFFS IDENTIFIED HEREIN FOR DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN WRONGFUL DEATH UNDER 28 U.S.C. §1605A(c)

373.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

374.    The Estates of Plaintiffs listed in the foregoing paragraphs assert claims on behalf of the decedents who were grievously injured by Defendant's provision of material support (within the meaning of §1605A(h)(3)), to terror operatives in Iraq who engaged in the acts of extrajudicial killing that caused the decedents' deaths.

375.    As a direct and proximate result of the willful, wrongful, and intentional acts of Defendant and its agents, the decedents listed in the foregoing paragraphs endured physical injury, extreme mental anguish, and pain and suffering that ultimately lead to their deaths.

376.    Defendant is therefore liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish, pain and suffering and any pecuniary loss (or loss of income to the estates).

377.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

## THIRD CLAIM FOR RELIEF
### AGAINST DEFENDANT ON BEHALF OF THE FAMILIES OF PLAINTIFFS IDENTIFIED HEREIN AS INJURED OR KILLED AS A RESULT OF DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING FOR LOSS OF SOLATIUM AND INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS UNDER 28 U.S.C. § 1605A(c)

378.    Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

379.    Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict severe emotional distress on Plaintiffs.

380.    As a result of Defendant's acts, the families of individuals identified in the foregoing paragraphs as injured or killed as a result of Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking have suffered severe emotional distress, extreme mental anguish, loss of sleep, loss of appetite, and other severe physical manifestations, as well as loss of solatium and other harms to be set forth to the trier of fact.

381.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. §1605A(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand:

(a)    Judgment for all Plaintiffs against Defendant for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and loss of solatium, in amounts to be determined at trial;

(b)    Judgment for Plaintiff Estates against Defendant for compensatory damages for wrongful death, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and any pecuniary loss (or loss of income to the estates) in amounts to be determined at trial;

(c)    Judgment for all Plaintiffs against Defendant for punitive damages in an amount to be determined at trial;

(d)    Plaintiffs' costs and expenses;

(e)    Plaintiffs' attorney's fees; and

(f)    Such other and further relief as the Court finds just and equitable.

Dated: June 19, 2017

Respectfully submitted,

THE DRISCOLL FIRM, P.C.

By:      ___/s/John J. Driscoll_____
           JOHN J. DRISCOLL, #54729
           211 N. Broadway, 40th Floor
           St. Louis, Missouri  63102
           314-932-3232 telephone
           314-932-3233 facsimile
           john@thedriscollfirm.com

           *Attorney for Plaintiffs*